**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

GRACE ELLEN BOTWRIGHT,

    *Plaintiff*,

v.

UNITED STATES POSTAL SERVICE,
John E. Potter, Postmaster General,
AMERICAN POSTAL WORKERS
UNION,

    *Defendants*.
_____/

CASE NO. 08-CV-12998

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANT UNITED STATES POSTAL SERVICE'S
MOTION FOR SUMMARY JUDGMENT**
(Doc. 43)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion be **GRANTED**.

**II.    REPORT**

    **A.    Introduction**

By order of United States District Judge Thomas Ludington, this employment discrimination case was referred to the undersigned magistrate judge for general case management on July 15, 2008. (Doc. 3.) On February 8, 2010, Defendant United States Postal Service (hereafter "Defendant") filed the instant motion for summary judgment. (Doc. 43.) After an extension of time and the adjudication of an intervening motion, Plaintiff filed her response on June 3, 2010. (Doc. 53.) Having considered the briefs submitted by the parties, the Court is

satisfied that it would not be assisted by oral argument on the motion. Therefore, in accordance with local rules, the motion is submitted ready for report and recommendation. E.D. Mich. LR 7.1(f)(2).

**B.     Background**

Plaintiff's employment with United States Postal Service (hereafter "Defendant") was terminated as of July 26, 2004. At the time of her removal, Plaintiff was 43 years of age and was employed as an automation clerk at the Saginaw, Michigan, Processing and Distribution Center ("Saginaw P & DC"). (Def.'s Mot., Doc. 43 at 1.)

In November 2004, Plaintiff filed a formal discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging both and disability discrimination in violation of the Rehabilitation Act , 29 U.S.C. § 791 *et seq.*, and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Doc. 43 at Ex. 18.) Plaintiff claimed that, despite her requests, Defendant "failed to accommodate [her] phonophobia and scroptophobia."[1] (*Id.*) On December 12, 2005, an EEOC Administrative Law Judge ("ALJ") issued a decision finding no discrimination without holding a hearing. (Doc. 43 at Ex. 19.) Plaintiff appealed, and on April 10, 2008, the finding of no discrimination was affirmed in a five-page opinion. (*Id.* at Ex. 21.)

Plaintiff filed the instant civil action against the United States Postal Service on July 11, 2008. The original 2-page form complaint asserted that Plaintiff's termination was discriminatory with respect to her disability of "bipolar disorder."[2] (Doc. 1.) On July 21, 2008, Plaintiff filed an amended complaint consisting of the same 2-page form complaint and 29 pages of attachments.

---

[1] Plaintiff explained in her deposition that phonophobia is a fear of talking to people on the phone and scroptophobia is a fear of having people stare at you. (Pl.'s Dep., Doc. 44, Ex. 11 at 25.)

[2] In this Court, Plaintiff did not reassert her claim of age discrimination that she had raised in her EEO complaint.

(Doc. 4.) The form complaint stated that her EEOC right-to-sue documentation was attached, but it was not, so in response to the Court's show cause order, Plaintiff filed another amended complaint on August 21, 2008. For the first time on this form complaint Plaintiff added the words "wrongful discharge"; she also attached the referenced EEOC documentation. (Doc. 7 at 2.)

On July 1, 2009, as discovery was progressing, Plaintiff sought leave to amend her complaint to add a second defendant, the American Postal Workers Union ("APWU"). Defendant had no objection and Plaintiff's motion was granted. On August 21, 2009, the most recent Amended Complaint was filed, adding the APWU as a defendant and adding the allegations of "failure to remove past discipline," "use of unremoved past discipline to terminate employment," "falsification of documents to terminate employment," "failure to complete retirement paperwork so they could falsify documents," and "not following removal procedure." (Doc. 34 at 2.)

### C. Defendant's Motion for Summary Judgment

Defendant United States Postal Service moves for summary judgment, arguing first that Plaintiff cannot establish that she suffered from her claimed impairment of bipolar disorder at the time of her termination where the evidence shows that she was diagnosed with that disorder two years after her termination. Next, Defendant asserts that Plaintiff's claim that she was suffering from phobias at the time of her dismissal are insufficient because there is no medical evidence to establish either that she suffered from phobias or that they were an early manifestation of bipolar disorder. (Doc. 43 at 8.) Defendant contends that Plaintiff cannot establish that Defendant regarded her as disabled, which is required for a disability discrimination claim. (*Id*. at 8-9.) Defendant also asserts that Plaintiff's "wrongful discharge" claim is subject to dismissal because it is preempted by the Postal Reorganization Act. (*Id*. at 10-12.)

Defendant has attached to its motion documentation relating to Plaintiff's termination from employment. The documents show that in April 2002, the Saginaw P & DC informed all

employees that, "[b]eginning Monday, May 6th, employees are required to contact the Attendance Office by calling toll free 1-866-282-6741" any time they are unable to report for work as scheduled. (Doc. 43 at Ex. 5.) This new call-in procedure was communicated to the employees in several ways and, in addition, Plaintiff's supervisor, Wade Cremeans, stated in his affidavit that he personally advised Plaintiff to call the 1-800 number on several occasions. (Ex. 7 at 1.) Plaintiff acknowledged in her deposition that she knew she had a duty to call the Attendance Office to report absences. (Ex. 2 at 7-8.)

In January 2003, Plaintiff submitted a disability notice to her employer indicating that she was suffering from work-related tenosynovitis of the right hand/finger and in February 2003 she provided a doctor's note indicating that she was totally disabled until March 3, 2003, due to this medical condition. (Ex. 12.) However, an investigation by the Postal Service revealed that while Plaintiff was on disability leave she was engaging in activity inconsistent with her claimed medical condition and therefore she was issued a Notice of Removal in June 2003. Plaintiff filed a grievance and the removal was reduced to a 14-day suspension, which would remain in her file for one year – from August 2003 to August 2004. (Ex. 2 at 5-6.)

On April 8, 2004, Plaintiff left work during her shift. Plaintiff explained in her deposition that she was having trouble breathing due to rhinitis and "a little case of asthma" and, when she could get no relief from her inhaler, she "started having a panic attack" and left. (Ex. 2 at 9.) Plaintiff never returned to work. On May 25, 2004, Plaintiff's supervisor sent a notice to Plaintiff informing her that she was scheduled for a pre-disciplinary meeting for failing to work and failing to contact the Attendance Office to report that she was unable to work. (Ex. 9.) Plaintiff did not attend the scheduled meeting. (Ex. 22 at 60-61.) Because Plaintiff had active discipline in her file from the 2003 incident (the 14-day suspension), removal was the next step of progressive

discipline (Ex. 14) and Plaintiff was issued a Notice of Removal effective June 26, 2004. (Ex. 10.) Plaintiff did not file a timely grievance with regard to her removal. (Ex. 22 at 14.)

After her removal was effective, Plaintiff filed an EEO Complaint of Discrimination in the Postal Service. In the box asking for the "Type of Discrimination You Are Alleging," Plaintiff checked the boxes for both "Age (40+)" and "Disability." (Ex. 18.) In the section where Plaintiff was asked to explain the specific actions that led her to believe she had been discriminated against, Plaintiff wrote that "two under-40 employees were both given last chance agreements in writing. I never received a last chance." (Ex. 18 at 1.) She also explained that "[t]hey failed to accommodate my phonophobia and scroptophobia, saying that I had to call [the 1-800 number in] Grand Rapids just like everyone else . . . ." (*Id.*) Plaintiff acknowledged in her deposition that no medical doctor ever diagnosed her with either of these phobias, that she determined she suffered from them after doing her own research on the internet, and that she never told anyone at the Postal Service that she suffered from them. (Ex. 2 at 40-44; Ex. 22 at 30-31.)

Plaintiff's response to Defendant's motion is completely in narrative form, neither referring to any record evidence nor providing any exhibits or documentation to support her assertions. (Doc. 51.) Plaintiff relies heavily on her 2006 diagnosis of bipolar disorder to support her claims of disability discrimination relating to her 2004 removal.[3] Plaintiff states that "just because you never knew the name for something or went to a doctor to have them diagnose you doesn't mean you don't have it. The Plaintiff also suffers from claustrophobia, attention deficit disorder, and obsessive compulsive disorder." (Doc. 51 at 3.) Plaintiff also claims that the proper disciplinary steps were not followed because she "never received a seven day suspension," which she alleges

---

[3]Plaintiff apparently was diagnosed with bipolar disorder in 2006 by John J. Kemerer, D.O., of Valley Urgent Care in Saginaw, Michigan. (Doc. 43 at Ex. 23.)

is supposed to precede a 14-day suspension or a removal in Defendant's progressive discipline plan. (*Id*. at 1.)

### D. Standard of Review

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos*., 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is

"utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406. "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008) (granting summary judgment where plaintiff supported each allegation of racial animus only with citation to his own testimony stating his opinion that he was the victim of racial harassment).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### E.    Analysis & Conclusion

#### 1.    Rehabilitation Act Claim

The Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, rather than the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, provides the exclusive remedy for Postal Service employees asserting a claim of disability discrimination. 42 U.S.C. § 12111(5)(B)(I); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). Under the Rehabilitation Act, the Postal Service is prohibited from discriminating against an employee "solely by reason of her or his disability." 29 U.S.C. § 794(a). To establish a prima facie case of discrimination under the Act, Plaintiff must demonstrate that: "1) [s]he is an individual with a disability; 2) [s]he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) [s]he [suffered an adverse employment action] solely by reason of [her] handicap." *Jones*, 488 F.3d at 403

(quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)). To be disabled within the meaning of the statute, an individual must (1) have a physical or mental impairment that "substantially limits" him in at least one "major life activity," (2) have a record of such impairment, or (3) be regarded as having such an impairment. 29 U.S.C. § 705(20)(b). *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002).

Defendant asserts that it is entitled to summary judgment on Plaintiff's disability discrimination claim because there is no evidence to demonstrate that Plaintiff suffered from her claimed disability – bipolar disorder – at the time of her termination, and I suggest that Defendant is correct. The only evidence of bipolar disorder is the documentation from Valley Urgent Care that is dated April 27, 2006. (Doc. 43 at Ex. 23.) Plaintiff has not met her burden of presenting "significant probative evidence" to refute this assertion and raise a genuine issue of fact. *See Moore*, 8 F.3d at 339-40. Instead, through her deposition testimony and her argument that a person doesn't have to have been diagnosed with an illness to suffer from that illness (a truism, no doubt), Plaintiff acknowledges that she has no evidence to support her position that she was disabled due to bipolar disorder in 2004. Furthermore, although Plaintiff contends that her phobias were early symptoms of bipolar disorder, Plaintiff has offered no evidence to support that theory, as would be required to survive a motion for summary judgment.

Defendant further asserts that Plaintiff cannot establish that Defendant regarded her as disabled, as she has offered no evidence to show that those involved in the decision to terminate her considered her to be disabled. *See Landefeld v. Marion General Hospital, Inc.*, 994 F.2d 1178 (6th Cir. 1993). Despite Plaintiff's contention that "people knew" that she suffered from depression and panic attacks, Plaintiff has presented no evidence to suggest that her employer regarded her as disabled, nor has she directed the Court's attention to any record evidence to so suggest.

Accordingly, I suggest that Defendant's motion for summary judgment on Plaintiff's disability discrimination claim be granted because there is insufficient evidence indicating that Plaintiff "is an individual with a disability," *Jones*, 488 F.3d at 403, to require submission of the issue to a jury. Instead, the evidence, I suggest, is "so one-sided that one party must prevail as a matter of law.'" *Booker,* 879 F.2d at 1310.

### 2.   Wrongful Discharge Claim

Plaintiff indicated in her deposition that her real claim is that Defendant failed to follow the correct procedures in removing her. (*See* Dep., Doc. 43, Ex. 22 at 15; Am. Compl. Doc. 34.) Defendant asserts that this tort claim of wrongful discharge is subject to dismissal because it is preempted by the Postal Reorganization Act. (Doc. 43 at 9.) Plaintiff has not refuted Defendant's allegation that her claim is preempted.

Disputes concerning employment decisions of the Postal Service are governed by the statutory procedures contained in the Postal Reorganization Act ("PRA"), 39 U.S.C. § 1001 *et seq. See Bush v. Lucas*, 462 U.S. 367, 385-89, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983); *Harper v. Frank,* 985 F.2d 285, 288-92 (6th Cir. 1993). The PRA "provides a comprehensive scheme for employment relations within the USPS, and as such it preempts recourse to other possible statutory bases for federal district court jurisdiction." *Kroll v. United States*, 58 F.3d 1087, 1089 (6th Cir. 1995).

In this case, Plaintiff had available to her a comprehensive remedial scheme that governed her employment, and the first step in that process was to file a grievance about an adverse action such as removal. *See* 39 U.S.C. §§ 1001-11, 1201-09. Plaintiff, however, acknowledged in her deposition that she failed to file a timely grievance. (Doc. 22 at 14.) She cannot, I suggest, do an end-run around her procedural default by filing a wrongful discharge action in this Court because such an action is preempted by the PRA.

Accordingly, I suggest that Defendant's motion be granted on this claim as well.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." FED. R. CIV. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

            s/ *Charles E Binder*
            CHARLES E. BINDER
Dated: August 27, 2010        United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Barbara Tanase, served on Ms. Grace Ellen Botwright by first class mail at 1653 Bel Air St., Saginaw, MI, 48604-1629; and served on District Judge Ludington in the traditional manner.

Date: August 27, 2010        By  s/*Jean L. Broucek*
                Case Manager to Magistrate Judge Binder